UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRIENDS OF THE EARTH,<br><br>                Plaintiff,<br><br>  v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>                Defendant. | C18-677 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, docket no. 13, and Plaintiff's Response and Cross-Motion for Summary Judgment, docket no. 18. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following order.

**<u>Issue Presented</u>**

This dispute arises out of Plaintiff's request, pursuant to the Freedom of Information Act ("FOIA"), to the U.S. Army Corps of Engineers ("the Corps") for a copy of the March 2017 Biological Evaluation (the "March 2017 BE") regarding the effect of new or revised permits for the construction and operation of a second dock for crude oil deliveries at the Cherry Point Terminal operated by British Petroleum ("BP"). The issue

ORDER - 1

presented is whether the March 2017 BE must be produced pursuant to Plaintiff's FOIA request or whether it is exempt from disclosure.

**Background**

BP currently holds a permit from the Corps to construct and operate a second dock, known as the "North Wing dock," at the Cherry Point Refinery Marine Terminal. Declaration of David J. Martin ("Martin Decl."), docket no. 15, ¶ 4. As a result of earlier litigation, the Corps is in the process of preparing an after-the-fact Environmental Impact Statement ("EIS") regarding the permit and its compliance with, among other things, the Endangered Species Act ("ESA"). *See Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 875 (9th Cir. 2005).

BP's effort to construct and operate a second dock at the Cherry Point facility has spanned more than four decades. *Id.* at 855 (describing BP's request to develop the second dock in 1977). In 1996, the Corps concluded that construction of the North Wing dock would not result in significant adverse environmental impacts and granted the permit without preparing an EIS. Various organizations publicly disputed the Corps' conclusions, expressing concerns over increased tanker traffic, the risk of oil spills, and harm to fish, wildlife, and the environment. *Id.* at 856-57. Ultimately the Ninth Circuit Court of Appeals ordered the preparation of an EIS even though BP has since completed construction of the dock. *Id.* at 871-72.

The ESA was enacted to preserve and protect threatened and endangered species and the ecosystems upon which they depend. 16 U.S.C. § 1531. The ESA requires a federal agency to "insure that any action authorized, funded, or carried out by such

agency . . . is not likely to jeopardize the continued existence of any endangered or threatened species . . . ." *Id.* § 1536(a)(2). This statutory mandate—commonly referred to as a Section 7 consultation—requires agencies to "consult" with the National Marine Fisheries Service ("NMFS") and/or the U.S. Fish and Wildlife Service ("USFWS") (together, the "Services"). 50 C.F.R. § 402.14(a). Consultation is accomplished by the initiating agency or the project proponent drafting a biological assessment[1] and sharing that document with one or more Services for their review. If a Service determines the proposed action is likely to adversely affect endangered or threatened species, the Service conducts a "formal" consultation and drafts a biological opinion. 50 C.F.R. § 402.14. Depending on the outcome of the consultation, a Service may identify "reasonable and prudent alternatives" to the proposed action. 16 U.S.C. § 1536(b)(3)(A).

The Corps initiated Section 7 consultation with the Services in connection with preparing the EIS for the Cherry Point Terminal. Martin Decl. ¶ 7. In order to begin consultation, the Corps requested that BP prepare the BE, and BP retained an outside consultant to prepare the BE. Answer, docket no. 8, ¶ 26; Martin Decl. ¶ 5. The Corps "furnished BP and its contractor guidance and supervision and independently reviewed and evaluated the scope and contents of this BE." Martin Decl. ¶ 5. The Corps also requested that the contractor make certain edits to several drafts of the BE in 2014, and the Corps also made unilateral edits to the BE around the same time. *Id.* ¶ 7. As a result

---

[1] According to the Corps, the Seattle District uses the term "Biological Evaluation" to refer to a biological assessment prepared under Section 7. Def.'s Br., docket no. 13, at 3 n.1. Like the parties, the Court will refer to the document at issue in this case as a Biological Evaluation ("BE").

of feedback from the Services between 2014 and 2016, the Corps "directed BP's contractor on June 8, 2016 to revise the BE . . . ." *Id.* Thereafter,

> On April 6, 2017, the Corps received from the applicant [BP] a revised version of the BE, labeled with the date "March 2017," and initiated a review of the revised version. After meeting with the Services on May 26, 2017, the Corps completed its review of the BE, adopted the updated version and, on June 16, 2017, submitted it to the Services to continue the ongoing ESA Section 7 consultation.

*Id.*; *see also* Supplemental Declaration of David J. Martin ("Martin Supplemental Decl."), docket no. 23, ¶¶ 3, 4 (describing the two rounds of review in 2014 and 2017, including edits made by the Corps to earlier versions before the March 2017 BE). The USFWS subsequently engaged in informal consultation, which has concluded. NMFS, however, is proceeding with formal consultation, which will be concluded with the issuance of a Biological Opinion under 50 C.F.R. section 402.14. Martin Decl. ¶ 8.

On July 10, 2017, Plaintiff submitted a FOIA request to the Corps asking for the updated biological assessment that BP submitted to the Corps. Declaration of Richard M. Hynes ("Hynes Decl."), docket no. 14, ¶¶ 2, 3. The FOIA requires federal agencies to release records upon request to any person unless the record falls within an express statutory exemption. 5 U.S.C. § 552(a), (b)(1)-(9); *see also Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (purpose of FOIA is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny"). "Because FOIA is meant to promote disclosure, its exemptions are interpreted narrowly." *Sierra Club v. U.S. Fish and Wildlife Serv.*, 911 F.3d 967, 978 (9th Cir. 2018) (citing *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 920 (9th Cir. 1992)). Although the public's right to

information under the FOIA is not absolute, the burden is always on the government to prove that withholding is authorized. 5 U.S.C. § 552(a)(4)(B). The government may meet that burden through the submission of affidavits containing "reasonably detailed descriptions of the documents and alleg[ing] facts sufficient to establish an exemption . . . ." *Lewis v. I.R.S.*, 823 F.2d 375, 378 (9th Cir. 1987).

The statutory exemption at issue in this case—commonly referred to as "Exemption 5"—permits agencies to withhold documents that are pre-decisional and part of the deliberative process. 5 U.S.C. § 552(b)(5). The FOIA also sets specific deadlines by which agencies must respond to appeals of agency decisions. *E.g.*, 5 U.S.C. § 552(a)(6)(A)(ii) (agency must make a determination with respect to any appeal within twenty days of receipt).

In a letter response dated July 26, 2017, the Corps denied Plaintiff's FOIA request on the grounds that the document is "a pre-decisional deliberative document" and exempt from disclosure under Exemption 5. Hynes Decl. ¶ 6. Plaintiff's appeal of the Corps' denial was received on September 7, 2017. *Id.* ¶ 7. On December 12, 2017, the Corps informed Plaintiff that it received the appeal, *id.* at 9, but the Corps did not further communicate with Plaintiff regarding any resolution of the appeal.

Plaintiff filed its complaint on May 10, 2018. Complaint, docket no. 1. The Complaint alleges four claims. The first claim alleges that the Corps failed to resolve Plaintiff's administrative appeal within the deadlines established by the FOIA. The second claim alleges a violation of the FOIA for unlawfully withholding the March 2017

BE. The third claim, which Plaintiff has abandoned,[2] alleges FOIA violations related to the Corps' failure to provide estimated completion dates. Plaintiff's fourth claim alleges violations of the Administrative Procedure Act as an alternative basis for liability.

**Discussion**

Plaintiff moves for summary judgment on its first and second claims, contending that the Corps violated the FOIA by failing to resolve Plaintiff's appeal within the twenty-day deadline mandated by the FOIA, and that the Corps is unlawfully withholding the March 2017 BE by invoking FOIA Exemption 5 to withhold the document as a pre-decisional and deliberative federal agency document. Docket no. 18 at 2. The Corps has filed a cross-motion for summary judgment on the grounds that the Corps properly invoked Exemption 5 and that the March 2017 BE is exempt from disclosure. Docket no. 13.[3] The parties agree that there are no contested material facts that would preclude the entry of summary judgment.

### I. Standard of Review

FOIA disputes may be—and often are—resolved via motions for summary judgment. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008); *Shannahan v. I.R.S.*, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009). The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to

---

[2] Plaintiff abandoned claim three during briefing on the cross-motions for summary judgment. Plf.'s Response and Cross-Motion for Summary Judgment, docket no. 18, at 28.

[3] Plaintiff also moves on the fourth claim, in the alternative, only if there is no adequate remedy under the first claim.

ORDER - 6

judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Alternatively, a movant must show that the plaintiff lacks competent evidence to support an essential element of his or her claim. *Id.* at 322; *Luttrell v. Novartis Pharms. Corp.*, 894 F. Supp. 2d 1324, 1340 (E.D. Wash. 2012). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

**II.  Plaintiff's First Claim: The Corps' Failure to Timely Resolve Plaintiff's Appeal**

It is undisputed that the Corps failed to make a determination regarding Plaintiff's administrative appeal by the deadline set forth in 5 U.S.C. § 552(a)(6)(A)(ii).[4] The Court finds that the delay—which lasted several months until Plaintiff elected to file this lawsuit—is sufficiently egregious to justify relief. *See Long v. I.R.S.*, 693 F.2d 907, 910

---

[4] *See* Def.'s Reply, docket no. 22, at 17-18 (arguing that Plaintiff's decision to seek judicial review was a sufficient remedy "even though there was a delay later in the administrative process"); *see also* Hynes Decl., Ex. 4 (describing receipt of appeal on September 7, 2017).

1 (9th Cir. 1982) ("[U]nreasonable delays in disclosing non-exempt documents violate the
2 intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.").
3 Accordingly, the Court grants Plaintiff's motion for summary judgment on its first claim.
4 The Court concludes that the remedy is limited to declaratory relief that the Corps
5 violated the statute and to Plaintiff's ability to seek judicial review in this Court. *See,*
6 *e.g.*, *Munger, Tolles & Olson LLP ex rel. American Management Servs. LLC v. U.S.*
7 *Dep't of Army*, 58 F. Supp. 3d 1050, 1054 (C.D. Cal. 2014) (granting declaratory relief
8 for "[a] total unjustified delay of over a year" after failing to respond to an appeal);
9 *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 189 (D.D.C. 2013) ("If the
10 agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency
11 cannot rely on the administrative exhaustion requirement to keep cases from getting into
12 court."). Because Plaintiff has already filed this action, no further declaratory relief is
13 appropriate.

**III.     Plaintiff's Second Claim: Unlawful Withholding**

"Section 522 of Title 5, FOIA, 'mandates a policy of broad disclosure of government documents.' Agencies may withhold documents only pursuant to the exemptions listed in § 552(b)." *Sierra Club*, 911 F.3d at 977 (quoting *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997)). One of those exemptions, the so-called "Exemption 5" or "deliberative process privilege," protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency. . . ." 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: its source must be a

Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Thus, if a document is not an "agency" document, an agency may not withhold it regardless of whether it reflects the deliberative process of the agency, attorney work-product, or is an attorney-client communication. Defendant "therefore bear[s] the burden of proving that the documents [it] maintain[s] should be exempt from disclosure are both 'pre-decisional and deliberative.'" *Sierra Club*, 911 F.3d at 978 (quoting *Carter v. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002)). Disclosure may also be required of documents that are otherwise subject to Exemption 5 if the government agency waives its right to the exemption by voluntarily sharing the document with third parties. *Mobil Oil Corp. v. U.S. Envt'l Protection Agency*, 879 F.2d 698, 700-01 (9th Cir. 1989).

### A. The March 2017 BE Is Not a Federal Agency Document

The March 2017 BE was prepared by a private consultant, who delivered the document to BP, the same entity that applied for a permit from the Corps. Thereafter, BP delivered the document to the Corps, which adopted it and submitted it to the Services for consultation. The Court concludes that the March 2017 BE is therefore not an agency document for purposes of the FOIA.

The Corps makes two arguments that the March 2017 BE is—despite its origin—an agency document for purposes of FOIA. First, the Corps argues that "once the Corps adopted the March 2017 BE as its own document" all connections between BP and its consultant "were severed." Def.'s Reply, docket no. 22 at 4. However, the Corps has not

identified a single case in which an agency's "adoption" transforms a third-party document into a federal agency-created document. *Id.*; *see also* Martin Supplemental Decl. ¶ 3. The March 2017 BE was created by a third party consultant for BP, and BP—not the consultant—submitted the BE to the Corps. As a result, the March 2017 BE is not a federal agency document subject to exemption.

The Corp's second argument relies on the so-called "consultant corollary," a judicially-created rule that treats certain third-party documents as agency documents for purposes of FOIA. The Supreme Court has clarified that the consultant corollary will apply whenever "the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it." *Klamath*, 532 U.S. at 11. Under the consultant corollary, "an agency can invoke Exemption 5 with regard to records of communications with a third party if that private individual was acting 'just as a[] [government] employee would be expected to do'. . . ." *Ctr. for Biological Diversity v. Office of the U.S. Trade Representative*, 450 Fed. App'x 605, 608 (9th Cir. 2011) (quoting *Klamath*, 532 U.S. at 11).

The Corps argues that the consultant corollary should apply to the March 2017 BE, because the consultant "was acting as a government employee when drafting the BE." Def.'s Reply, docket no. 22 at 6 (citing Martin Supplemental. Decl. ¶¶ 3-6). This position is unpersuasive, and belied by the undisputed facts. Information necessary to conduct a Section 7 consultation under the ESA is normally provided by the permit applicant (here, BP) in the form of a BE. Martin Decl. ¶¶ 5, 7. In this case, BP retained a consultant to prepare the subject BE. *Id.* After several drafts and feedback provided by

the Corps, a revised version of the BE, labeled with the date "March 2017" was received by the Corps from BP. *Id.* ¶ 7. Subsequently, the Corps adopted that version and on June 16, 2017, "submitted it to the Services to continue the ongoing ESA Section 7 consultation." *Id.* The Corps admits that BP has interests at stake in the Corps' evaluation and the Section 7 consultation. *Id.* ¶¶ 4, 8, 12. The Corps also admits that it did not hire BP or the consultant to prepare the BE; rather BP retained the consultant for that purpose. *Id.* ¶¶ 5-7. The Corps has offered no evidence that the consultant did not represent an interest of its own or the interest of BP.

Although the Corps has its own, neutral interests in the consultation and participated in the creation of the BE by directing the consultant to make certain edits earlier in the process, the Corps made no changes to the March 2017 version that it received from BP and transmitted to the Services. *See* Martin Supplemental Decl. ¶ 3 (describing how the Corps "directed modification" of earlier versions of the BE, adopted the version received in April 2017, and "then submitted the BE directly to the Services"); Martin Decl. ¶ 7 (explaining that the Corps "received from the applicant [BP] a revised version of the BE" and transmitted that version to the Services without describing any intervening revisions or changes).[5]

The Corps relies on numerous cases in which courts have found records exempt under the consultant-corollary of Exemption 5. But all of those cases are readily

---

[5] The Corps does not argue that it formally designated the consultant to write the biological evaluation pursuant to 50 C.F.R. § 402.08, and this Order does not reach the question of whether documents prepared by a formal designee fall within the exemption.

ORDER - 11

distinguishable because the consultants were hired or solicited by the agency to provide neutral advice and did not—as in *Klamath*—"represent . . . the interest of any other client, when it advises the agency that hires it." *Klamath*, 532 U.S. at 11; *see, e.g.*, *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1245 (10th Cir. 2009); *Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 512 F.3d 677, 682-83 (D.C. Cir. 2008) (quoting *Klamath*, 532 U.S. at 10-11); *Public Citizen, Inc. v. Dep't of Justice*, 111 F.3d 168 (D.C. Cir. 1997); *Maricopa Audubon Society v. U.S. Forest Serv.*, 108 F.3d 1089 (9th Cir. 1997); *Formaldehyde Inst. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989); *Ryan v. Dep't of Justice*, 617 F.2d 781 (D.C. Cir. 1980); *Sakamoto v. U.S. E.P.A.*, 443 F. Supp. 2d 1182, 1191 (N.D. Cal. 2006).[6] The consultant corollary does not apply to the March 2017 BE.

### B. The March 2017 BE Is Not Pre-Decisional

Even if the BE were considered an "agency" document, it must still satisfy the deliberative process prong of the exemption, meaning it must be "*both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Nat'l Wildlife*

---

[6] The Corps also relies on *Electronic Privacy Information Center (EPIC) v. U.S. Department of Homeland Security*, which appears to misread *Klamath* as requiring actual adversity between the consultant and the agency before the communications lose protection. 892 F. Supp. 2d 28, 35-38 (D.D.C. 2012). *Klamath* does not require adversity, however, and the Court finds *EPIC*'s reasoning unpersuasive. References to adversity in the *Klamath* opinion serve only to bolster the *Klamath* Court's conclusion regarding the inapplicability of the exemption in that case. *Klamath*, 532 U.S. at 12 ("The Tribes, on the contrary, necessarily communicate with the Bureau with their own, albeit entirely legitimate interests in mind. *While this fact alone distinguishes tribal communications from the consultants' examples . . . the distinction is even sharper*, in that the Tribes are self-advocates at the expense of others seeking benefits inadequate to satisfy everyone.") (emphasis added).

*Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (citation omitted). A "'predecisional' document is one 'prepared in order to assist an agency decision-maker in arriving at his decision,' . . . and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency . . . .'" *Assembly of Cal.*, 968 F.2d at 920 (citations omitted). A document that is predecisional at the time it was prepared "can lose that status if it is adopted, formally or informally, as the agency position on an issue . . . ." *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1098 (C.D. Cal. 2005) (quotation marks and citation omitted). Final biological evaluations are normally not predecisional because they constitute the agency's official position. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Marine Corps*, No. 00-2387, 2005 WL 3262901, *2 (D.D.C., Sept. 19, 2005) (rejecting the argument that Section 7 consultation "constitutes one long deliberative process with Defendant making its final decision after it receives the biological opinion from" a Service and holding that Exemption 5 did not justify withholding a biological assessment).

In this case, the Corps "adopted" the March 2017 BE as its own before submitting it to the Services for Section 7 consultation. Martin Decl. ¶ 7. The Corps admits that the March 2017 BE is entitled "Final Biological Evaluation." Def.'s Reply, docket no. 22, at 7 n.1. The March 2017 BE is not predecisional and not exempt from disclosure under Exemption 5. *See also Sierra Club*, 911 F.3d at 980-81 (recognizing that draft biological opinions are not predecisional where they represent an agency's "final views and

recommendations" even where other agencies may have subsequent opportunities to influence the agency's decision as part of Section 7 consultation).

### C. The Corps Waived Any Privilege Under FOIA

Alternatively, the Corps waived any privilege when the document was shared with the applicant, BP, who submitted it to the Corps. Martin Decl. ¶ 7 (stating that the Corps received the March 2017 BE from "the applicant"); Martin Supplemental Decl. ¶ 3; *Mobil Oil Corp.*, 879 F.2d at 700. In this case, BP is a third party seeking a permit from the Corps, and it has received preferential treatment (i.e., advance disclosure of the March 2017 BE) relative to other members of the public. The interests of BP are inconsistent with Plaintiff's interest in disclosure and the outcome of the permitting process.[7] *See State of N.D., ex rel. Olson v. Andrus*, 581 F.2d 177 (8th Cir. 1978) ("[S]elective disclosure . . . is offensive to the purposes underlying the FOIA and intolerable as a matter of policy. Preferential treatment of persons or interest groups fosters precisely the distrust of government that the FOIA was intended to obviate."). As a result, the document is not protected by Exemption 5 because it has already "seen the light of day."[8]

---

[7] The outcome of the environmental review and consultation process could result in the Corps "impos[ing] restrictions on the operation of the dock or require other mitigating measures." *Ocean Advocates*, 402 F.3d at 871. BP's interests in these eventualities are concrete and differ from those of the public at large.

[8] In light of the above conclusions, the Court need not decide whether the document is deliberative, whether any harm will result to the deliberative process if the document is disclosed, or whether the document can be segregated for partial disclosure.

ORDER - 14

### IV. Plaintiff's Fourth Claim: Violations of the Administrative Procedure Act

In the event Plaintiff did not prevail on its claims under the FOIA, Plaintiff brought a fourth claim under the Administrative Procedure Act ("APA"). Plaintiff has already prevailed on its first claim that Defendant violated the FOIA by failing to resolve Plaintiff's administrative appeal within the time proscribed by the statute. 5 U.S.C. § 552(a)(6)(A)(ii). Because Plaintiff has an adequate remedy under the FOIA, the Court lacks jurisdiction over Plaintiff's alternative claim under the APA. *See* 5 U.S.C. § 704 (providing for judicial review of "final agency action for which there is no other adequate remedy in a court"); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). This claim must therefore be dismissed.

## Conclusion

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's Motion for Summary Judgment, docket no. 18, is GRANTED in part and DENIED in part as follows:

> (a) With respect to Claim 1, the Court finds that Defendant the U.S. Army Corps of Engineers did not resolve Plaintiff's FOIA Appeal within the deadline set forth in the FOIA. 5 U.S.C. § 552(a)(6)(A)(ii). The Court further finds that the Corps' delay in resolving Plaintiff's FOIA Appeal warrants summary judgment and declaratory relief in Plaintiff's favor on Claim 1.

(b) With respect to Claim 2, the Court GRANTS Plaintiff's Motion for Summary Judgment and Defendant is ORDERED to provide the March 2017 BE to Plaintiff within twenty (20) days of the date of this Order.

(2) Defendant's Motion for Summary Judgment, docket no. 13, is GRANTED in part. Claim 4 of the Complaint, docket no. 1, is DISMISSED. Defendant's motion is otherwise DENIED.

(3) The Clerk is directed to enter judgment consistent with this Order, and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 30th day of January, 2019.

Thomas S. Zilly
United States District Judge